# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **EREBERTA FLOWERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 4:15CV177NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Ereberta Flowers (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 15). Defendant has filed a brief in support of the Answer. (Doc. 18). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 8).

# I.
## PROCEDURAL HISTORY

On May 9, 2011, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of November 30, 2009. (Tr. 11, 116, 123). Plaintiff's applications were denied, and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 11, 64-68, 71). After a hearing, by decision, dated September 24, 2013, the ALJ found Plaintiff not disabled. (Tr. 12-21). On December 11, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

# II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social

Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228

F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. See Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See

id.  Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.  <u>See</u> <u>Rautio v. Bowen</u>, 862 F.2d 176, 179 (8th Cir. 1988); <u>Millbrook v. Heckler</u>, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b)-(e).  The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy.  <u>See</u> <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006); <u>Nevland</u>, 204 F.3d at 857 (citing <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)).  The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work.  <u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.  The Commissioner has to prove this by substantial evidence.  <u>Warner v. Heckler</u>, 722 F.2d 428, 431 (8th Cir. 1983).  Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities.  <u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used.  An ALJ posing a hypothetical to a VE is not required to

include all of a plaintiff's limitations, but only those which the ALJ finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff alleged disability based on a combination of mental impairments. She did not allege that she had any physical impairments. The ALJ found that Plaintiff met the insured status requirements through December 31, 2014; that Plaintiff had not engaged in substantial gainful activity since November 30, 2009, Plaintiff's alleged onset date; that Plaintiff had the severe impairments of generalized anxiety disorder with panic attacks and post-traumatic stress disorder

(PTSD); that Plaintiff could engage in the full range of work at all exertional levels; that she was limited to simple, unskilled work with limited social interaction with co-workers, supervisors, and the public; that Plaintiff was unable to engage in her past relevant work; that there was work in the national economy, existing in significant numbers, which a person of Plaintiff's age and with her RFC, work experience, and education could perform; and that, therefore, Plaintiff was not disabled.

Plaintiff contends that the ALJ's decision is not based on substantial evidence because, at Step 2 of the sequential analysis, the ALJ failed to properly consider the severity of her personality disorder, because the ALJ gave improper weight to the opinion of Gretchen Brandhorst, Psy. D., and because the testimony from the VE did not provide substantial evidence to support the ALJ's decision. Plaintiff also argues that additional evidence which she submitted to the Appeals Council establishes that the ALJ's decision is not based on substantial evidence. For the following reasons, the court finds that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A.     Plaintiff's Credibility:**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC.  See Wildman v. Astrue, 596 F.3d 959,

969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010).  As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ.  See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence.  Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).  Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make.  See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).  See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is

recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87

F.3d 963, 966 (8th Cir. 1996).

In any case, "[t]he credibility of a claimant's subjective testimony is

primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d

1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's

testimony and gives good reason for doing so, [a court] will normally defer to the

ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir.

2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v.

Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court

finds that the ALJ's determination that Plaintiff was not entirely credible is based

on substantial evidence. (Tr. 15).

First, the ALJ considered the objective medical evidence and concluded that

it did not support Plaintiff's allegations of disabling limitations. See Social

Security Ruling (SSR) 06-7p(4), 1996 WL 374186, at *1 (July 2, 1996) ("In

determining the credibility of the individual's statements, the adjudicator must

consider the entire case record, including the objective medical evidence,"

although disability determination "cannot be made solely on the basis of objective

medical evidence."). Indeed, a claimant's "symptoms, including pain, will be

determined to diminish [her] capacity for basic work activities to the extent that

[her] alleged functional limitations and restrictions due to symptoms can

reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record." Id. at *2.

As considered by the ALJ, Gautam Rohatgi, D.O., first saw Plaintiff on April 18, 2011. On that date, Dr. Rohatgi reported that Plaintiff's mood and affect were depressed; that her grooming and hygiene were appropriate; that she was cooperative; that her thought process was linear; that Plaintiff had no delusions, phobias, homicidal or suicidal ideations; and that her insight and judgment were "fair to poor." Subsequently, on June 20, 2011, and February 20 and September 6, 2012, Dr. Rohatgi reported that Plaintiff's thought process remained linear; that her thought content was devoid of psychosis, phobias, obsessions, suicidal ideation, or detachment from reality; and that she was cooperative. (Tr. 301, 322-23, 332). Also, on September 6, 2012, Plaintiff denied PTSD. (Tr. 322). On May 30, 2013, Dr. Rohatgi reported that Plaintiff's affect was appropriate; that her perceptions were without hallucinations and illusions; and that her insight and judgment were fair to poor. (Tr. 632). On August 22, 2013, Dr. Rohatgi reported that Plaintiff was cooperative, made good eye contact, had fluent and clear speech, sat comfortably, was not in distress, and had a linear thought process. Also, Plaintiff had no delusions, phobias, suicidal or homicidal ideations, or obsessions. (Tr. 655). Plaintiff was frequently described by Dr. Rohatgi as having appropriate grooming. (Tr. 301, 322, 322, 324, 326, 328, 330, 332, 334, 632).

Further, findings of health care providers, other than Dr. Rohatgi, did not support Plaintiff's allegations regarding the severity of her mental impairments. For example, when Plaintiff presented with abdominal pain, on April 12, 2011, it was noted that she was alert and oriented to person, place and time; that she had a normal affect; that she was calm, cooperative, and interacted appropriately; and that she verbalized no suicidal or homicidal ideation. (Tr. 225, 244). When she presented for possible carbon monoxide exposure, in June 2011, it was noted that Plaintiff was oriented to person, place and time. Significantly, Plaintiff's "[m]ood, memory, affect, and judgment [were] normal." (Tr. 561). Further, in January, May, November, and December 2011, and March and June 2012, Craig Pope, M.D., Plaintiff's primary care physician, and his nurse practitioner, Joy Boyer, N.P., reported that Plaintiff had "[n]o depressive symptoms," and no "changes in [her] sleep habits" or "thought content." (Tr. 202, 203, 480, 484, 486, 490).

Additionally, Kimberly R. Buffkins, Psy. D., who saw Plaintiff for a consultative psychological evaluation, on March 2, 2013, reported that, upon examination, Plaintiff was alert; that her hygiene and grooming were within normal limits; that she was cooperative and calm, and made good eye contact; that she had difficulty concentrating during parts of the mental status examination; that she had a logical thought process with no tangentiality; that she had no suicidal ideations or delusions; that Plaintiff was oriented in all spheres; that she could

complete simple calculations; and that she appeared capable of getting along with people "in general." (Tr. 500-502). As considered by the ALJ, on March 3, 2013, Dr. Buffkins completed a Medical Source Statement of Ability To Do Work-Related Activities (Mental), finding that Plaintiff had only mild limitations in her ability to perform mental work-related activities. (Tr. 19, 499-504).

Second, Dr. Rohatgi reported, in April 2011, that Plaintiff said that she was addicted to drinking alcohol; that, on the weekend, "she [could] drink one bottle of wine or tequila"; that she had a history of blackouts; and that she smoked marijuana on the weekends. (Tr. 276). In June 2011, Dr. Rohatgi diagnosed Plaintiff with alcohol abuse and "rule out marijuana abuse," discussed abstinence from these substances with her and their effect on mood, and told her that, if the substance abuse continued, medication could not be prescribed. (Tr. 301). On August 1, 2011, Plaintiff told Dr. Rohatgi that she was drinking "slightly" on the weekends, and Dr. Rohatgi discussed abstinence from substances with her. (Tr. 341). On September 1, 2011, Plaintiff told Dr. Rohatgi that she continued to drink on the weekends, at which time she might have a half bottle to a bottle of wine. Dr. Rohatgi again discussed abstinence from substances with Plaintiff. (Tr. 339-40). On November 22, 2011, Dr. Rohatgi diagnosed Plaintiff with probable alcohol abuse and discussed abstinence with her. (Tr. 335-36). See Wildman v. Astrue, 596 F.3d 959, 964-65 (8th Cir. 2010) (noncompliance is a basis for

discrediting a claimant; when claimant was compliant with dietary recommendations his pain was under good control). Notably, on January 10, 2013, when Dr. Rohatgi reported that Plaintiff did not have a "foreshortened future, nightmares, [or] flashbacks," that she was "doing okay," and that she had no "elicitation of depression, loss of interest," this doctor also reported that "no alcohol or illicit drug use [was] elicited."[1] (Tr. 509).

Third, in April 2011, when Plaintiff first saw Dr. Rohatgi, this doctor reported that Plaintiff had a Global Assessment of Functioning (GAF)[2] of 55 which

---

[1] In 1996, Congress eliminated alcoholism or drug addiction as a basis for obtaining social security benefits. See Kluesner v. Astrue, 607 F.3d 533, 537 (8th Cir. 2010). "An individual shall not be considered disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). The Regulations set out a two-step process in cases involving evidence of substance abuse. First, the ALJ must determine if the claimant symptoms, regardless of cause, constitute a disability. Kluesner, 607 F.3d at 537; 20 C.F.R. § 416.935(a). If the ALJ finds a disability and evidence of substance abuse, *the next step is to determine whether the disability would exist in the absence of the substance abuse*. Kluesner, 607 F.3d at 537.

[2] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32. See also Brown v. Astrue, 611 F.3d

reflects moderate difficulties. (Tr. 17, 276). Subsequently, on July 13 and August 9, 2012, Dr. Rohatgi reported that Plaintiff's GAF was 60, which is at the top of the moderate range. (Tr. 324, 326). Dr. Rohatgi reported that Plaintiff's GAF was 55 on December 7, 2012; that it was 60 on January 10, 2013; and that it was 60 on March 7, 2013. (Tr. 507, 509, 511). Also, in March 2013, Dr. Buffkins reported that Plaintiff's GAF was 60 to 65, and, on May 30, 2013, that it was 60. (Tr. 502, 632). See n.2 below (scores of 51 to 60 represent "moderate" symptoms and scores of 61 to 70 represent "mild" symptoms).

Fourth, the ALJ considered that Plaintiff's symptoms improved with treatment. (Tr. 17). Conditions which can be controlled by treatment or medication are not disabling. See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983

---

941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] . . . reflects 'some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships.'") (quoting Kohler v. Astrue, 546 F.3d 260, 263 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (alterations in original). See also Goff, 421 F.3d at 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations; GAF scores of 58-60 supported ALJ's limitation to simple, routine, repetitive work).

(8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling).

In this regard, on August 1, 2011, Plaintiff told Dr. Rohatgi that Paxil was "of benefit for her mood as she [felt] more calm and relaxed." (Tr. 341). On June 20, 2011, Plaintiff told Dr. Rohatgi that Trazodone helped her sleep, but that she did not want that medication. (Tr. 301). Plaintiff told Dr. Rohatgi, on September 1, 2011, that Paxil helped her; that Trazodone helped her sleep; and that she had not been taking the Trazodone "recently." Plaintiff also told Dr. Rohatgi that her mood was better with medication. (Tr. 339). On September 29, 2011, Dr. Rohatgi suggested extending the time between Plaintiff's clinic visits because Plaintiff's mood had improved. (Tr. 337). On February 20, 2012, Plaintiff told Dr. Rohatgi that life was "better, much more fun with Xanax," but "then retracted the statement." (Tr. 332). Dr. Rohatgi reported, on April 20, 2012, that Plaintiff did not want to make any changes to her medications and that she was sleeping well. (Tr. 328). On July 13, 2012, when Plaintiff told Dr. Rohatgi that she had increased problems with anxiety, Dr. Rohatgi adjusted her medications, and, at her next appointment, on August 9, 2012, Plaintiff reported that she was benefiting from her medication, without side effects. (Tr. 324, 326). On September 6, 2012, Plaintiff denied side effects from medication. (Tr. 322). On November 1, 2012, Plaintiff told Dr. Rohatgi that Vistaril was "of benefit for anxiety." (Tr. 320).

On March 7, 2013, Plaintiff told Dr. Rohatgi that Paxil helped with her depression, although it had some side effects, and that she continued to use Trazodone for sleep. (Tr. 507). On May 30, 2013, Plaintiff told Dr. Rohatgi that Trazodone was "of benefit for sleep," and she requested Ativan and Valium. (Tr. 632). On August 22, 2013, Plaintiff told Dr. Rohatgi that Effexor did not cause side effects; that she was tolerating it; that it was more efficacious than Paxil; and that she did not want to increase the medication. (Tr. 655). On September 13, 2013, Plaintiff's therapist noted that Plaintiff said that she had "reduced anxiety since cutting out caffeine." (Tr. 662).

Sixth, the ALJ considered that evidence suggested Plaintiff's motive for seeking treatment with Dr. Rohatgi was to obtain disability benefits. (Tr. 18). Notably, on September 29, 2011, when Dr. Rohatgi suggested more time between Plaintiff's visits, she asked "what would come of disability at which point [Plaintiff] was comforted by [a] statement that her disability [had] no bearing on whether she [saw] [Dr. Rohatgi] more or less, to which [Plaintiff] agreed and was quite pleased that the clinic visits were extended two months." (Tr. 337). Also, on January 10, 2013, Dr. Rohatgi reported that Plaintiff "presented asking if this [doctor] [was] tired of her coming in and stated that if" Dr. Rohatgi was tired of seeing her, the doctor "should just fill out the disability papers." (Tr. 509). On March 7, 2013, Plaintiff told Dr. Rohatgi that "she did not get her disability

because [Dr. Rohatgi's nurse] and [Dr. Rohatgi] did not write anything." (Tr. 507). The ALJ further considered that Dr. Rohatgi declined to complete a medical source statement provided by Plaintiff's attorney. (Tr. 18, 495).

To the extent Plaintiff argues that it was improper for the ALJ to consider her motive for seeking treating (Doc. 15 at 7), the Eighth Circuit holds that, when considering a claimant's credibility, an ALJ may properly consider that the claimant appeared to be motivated to qualify for disability benefits. See Eichelberger, 390 F.3d at 590 (8th Cir. 2004) ("[T]he ALJ found that Eichelberger had objectively determinable impairments, but also noted that her incentive to work might be inhibited by her long-term disability check of $1,700 per month.") (citing Gaddis v. Chater, 76 F.3d 893, 896 (8th Cir. 1996) (allowing an ALJ to judge credibility based on a strong element of secondary gain). In any case, Plaintiff's motivation for seeking disability was only one of many factors considered by the ALJ when determining Plaintiff's RFC.

Seventh, the ALJ considered what Plaintiff told health care providers. Contradictions between a claimant's sworn testimony and what she actually told physicians weighs against the claimant's credibility. Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006). Indeed, at times Plaintiff reported to her doctor that she was depressed or stressed (Tr. 301, 322, 507), but she also reported, at other times, that she was "doing well"; that her mood or anxiety were "better"; that she was

"okay" and "fine"; and that she did "not easily become stressed or irritable." (Tr. 320, 337, 341, 509). On February 20, 2012, Plaintiff did "not specifically state symptoms of anxiety," and was "quite vague." (Tr. 332). On September 6, 2012, Plaintiff told Dr. Rohatgi that she did not have "obsessions, compulsions, PTSD, [or] phobias," although she worried about her sister's health. (Tr. 322). Also, on November 1, 2012, Plaintiff told Dr. Rohatgi that she was eating and sleeping without difficulty and was as physically and socially active as she could be. (Tr. 320).

Eighth, as noted by Dr. Buffkins, on March 2, 2013, Plaintiff had no history of inpatient psychiatric hospitalizations. (Tr. 500). A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. See Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination that a claimant lacked credibility due in part to "absence of hospitalizations . . ., limited treatment of symptoms, [and] failure to diligently seek medical care"); 20 C.F.R. § 404.1529(c)(3)(v) (the agency will consider the claimant's treatment when evaluating her symptoms).

Ninth, on September 29, 2011, Dr. Rohatgi noted that Plaintiff missed her therapy appointments "at times." (Tr. 337). Also, on September 6, 2012, Plaintiff told Dr. Rohatgi that she was taking Vistaril on an as needed basis. (Tr. 322). On November 1, 2012, Dr. Rohatgi reported that, although Plaintiff said that Vistaril

helped her anxiety, she was not taking it on a regular basis. (Tr. 320). A note from Plaintiff's therapist, dated June 6, 2013, reflects that Plaintiff had missed a group session the day before. (Tr. 636). On June 26, 2013, the therapist reported that Plaintiff had not come to any groups, and discussed with Plaintiff her attending a group the following week. (Tr. 641). A note from Plaintiff's therapist, dated July 30, 2013, states that she called Plaintiff to "assess her level of commitment to Seeking Safety each week," and Plaintiff said "she did not think she could be there each week as she already came every two weeks." (Tr. 652). On August 22, 2013, Plaintiff's therapist called Plaintiff because she had not rescheduled her appointment from the day before. (Tr. 657). Indeed, "[a] failure to follow a recommended course of treatment [] weighs against a claimant's credibility." Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005).

Tenth, the ALJ considered inconsistencies in the record. (Tr. 17). For example, Plaintiff testified, at the hearing, that she was terminated from her last job because she was having too many panic attacks and problems with depression and anxiety (Tr. 28, 32), but medical records of April 8, 2011, reflect that Plaintiff indicated that she had been out of work for a year and a half because she was injured while working at a nursing home (Tr. 18, 290). Also, as considered by the ALJ, Plaintiff testified that, in 2009, she had deteriorated so much that she tried to kill herself, after which she went to the emergency room at St. Clare Hospital. (Tr.

18, 37).  The only evidence submitted from St. Clare Hospital was from October 2009.  This evidence reflects that Plaintiff presented with a panic attack after she started a new medication, and does not mention a suicidal gesture or ideation.  (Tr. 18, 211).  See Karlix, 457 F.3d at 748.

Eleventh, the ALJ considered that treatment notes frequently reflect that Plaintiff was "guarded" or "vague," which the ALJ found was evidence indicating less than full cooperation on Plaintiff's part.  (Tr. 18, 320, 322, 324, 332, 337, 335, 339, 507, 632).  Plaintiff argues that these traits are attributable to her personality disorder and should not have been considered as a credibility factor.  (Doc. 15 at 4-6).  Notably, Dr. Rohatgi never indicated that these traits were indications of a personality disorder, and, just as an ALJ should not play the role of a doctor by diagnosing conditions, neither should Plaintiff.  See Pates-Fires v. Astrue, 564 F.3d 935 (8th Cir. 2009) (finding ALJ should not rely on his own speculative lay opinion).  Moreover, even assuming, arguendo, that the ALJ improperly considered Dr. Rohatgi's comments, this was only one of many factors considered by the ALJ and was not outcome determinative.  See Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) ("There is no indication that the ALJ would have decided differently had he read the hand-written notation to say 'walk' rather than 'work' and any error by the ALJ was therefore harmless.").

Twelfth, on March 7, 2013, Dr. Rohatgi reported that, although Plaintiff said she sometimes did not have enough motivation to complete tasks, she stated that she was able to meet the responsibilities of caring for her children. (Tr. 507). On May 30, 2013, Dr. Rohatgi reported that Plaintiff distracted herself by gardening, and that she was growing habaneras and roses, among other things. Plaintiff also stated, on this date, that she was "able to perform activities of daily living as well as instrumental activities of daily living." (Tr. 632). See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (ALJ properly discounted plaintiff's credibility where, among other factors, plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cooking, tak[ing] care of his dogs, us[ing] a computer, driv[ing] with a neck brace, and shop[ping] for groceries with the use of an electric cart"). See also Ponders v. Colvin, 770 F.3d 1190 (8th Cir. 2014) (holding that substantial evidence supported the ALJ's denial of disability benefits in part because claimant "performs light housework, washes dishes, cooks for her family, does laundry, can handle money and pays bills, shops for groceries and clothing, watches television, drives a vehicle, leaves her house alone, regularly attends church, and visits her family").

Thirteenth, the ALJ considered that none of Plaintiff's treating sources identified any specific functional limitations. (Tr. 18). The Eighth Circuit holds that this is a significant consideration. See Young v. Apfel, 221 F.3d 1065, 1069

(8th Cir. 2000) (citing <u>Brown v. Chater</u>, 87 F.3d 963, 964-65 (8th Cir. 1996) (lack of significant restrictions imposed by treating physicians supported the ALJ's decision of no disability).

**B.     Severity of Plaintiff's Mental Impairment:**

The ALJ did find Plaintiff had the severe impairments of generalized anxiety disorder with panic attacks and PTSD, but did not find that Plaintiff's severe impairments included personality disorder.  Plaintiff contends that the ALJ did not properly consider the severity of Plaintiff's mental impairment at Step 2 of the sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.   In particular, Plaintiff argues that if the ALJ had considered personality disorder as a severe impairment at Step 2, he would have found she had additional functional limitations due to her "pervasive and inflexible thought patterns and behavior," such as use of judgment.  (Doc. 15 at 3-9).

As stated above, 20 C.F.R. § 404.1520, sets forth the five-step sequential evaluation process for determining whether a claimant is disabled within the Act's meaning.  At Step 2, a claimant bears the burden of proof to demonstrate that she has a severe impairment.  <u>See</u> <u>Kirby v. Astrue</u>, 500 F.3d 705, 707-08 (8th Cir. 2007) (citing <u>Mittlestedt v. Apfel</u>, 204 F.3d 847, 852 (8th Cir. 2000) (reversing district court and affirming Commissioner)).   A severe impairment is an impairment or combination of impairments that significantly limits a claimant's

physical or mental ability to perform basic work activities without regard to age, education, or work experience. See 20 C.F.R. §§ 404.1520(c), 404.1521(a) (emphasis added). "Basic work activities" encompass the abilities and aptitudes necessary to perform most jobs. 20 C.F.R. § 404.1521(b). Included are mental functions such as capacities for understanding, performing, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work situation. Id.

Also, at the second step, if the ALJ finds that a claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement of § 404.1509, or a combination of impairments that is not severe and meets the duration requirement, the ALJ must find the claimant not disabled. See 20 C.F.R. § 404.1520(a)(4)(ii). To establish an impairment, there must be "medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. A qualifying impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." Id. Thus, an alleged qualifying impairment must be medically determinable. See id. The required medical evidence must be from an acceptable medical source, such as a licensed physician. 20 C.F.R. §

404.1513(a)(1)-(2) ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)."; acceptable medical sources include licensed physicians).

Cluster B personality disorders include Antisocial, Borderline, Narcissistic, and Histrionic Personality Disorders.  See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 646, 659-72 (5th ed. 2013) (DSM-5). Notably, the ALJ considered, in detail, the records of Dr. Rohatgi, who was Plaintiff's treating psychiatrist.  (Tr. 13-19).  These records do not reflect that Dr. Rohatgi ever diagnosed Plaintiff with any *particular* personality disorder, although he diagnosed her with "Personality Disorder Nos.," on May 9, 2013.  (Tr. 619). Further, Plaintiff states that Dr. Rohatgi diagnosed Plaintiff with personality disorder on December 7, 2012.  (Doc. 15 at 8).  Records of this date reflect, however, that Dr. Rohatgi's diagnosis, at Axis I, on this date was PTSD, history of alcohol abuse, and history of major depressive disorder, the same diagnosis also reflected in Dr. Rohatgi's notes of December 2012 and January, March, April 2013.  (Tr. 507, 509, 511, 610, 632, 642, 650, 655).

Moreover, to the extent Plaintiff may have exhibited some traits of personality disorder, is not the same as being diagnosed with a personality disorder.[3]  The ALJ considered Plaintiff medical records and noted that Plaintiff

---

[3] 20 C.F.R. § Pt. 404, Subpt. P, App. 1 provides:

12.08 Personality Disorders:  A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress.  Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Deeply ingrained, maladaptive patterns of behavior associated with one of the following:

1. Seclusiveness or autistic thinking; or

2. Pathologically inappropriate suspiciousness or hostility; or

3. Oddities of thought, perception, speech and behavior; or

4. Persistent disturbances of mood or affect; or

5. Pathological dependence, passivity, or aggressivity; or

6. Intense and unstable interpersonal relationships and impulsive and damaging behavior;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

did suffer an abusive childhood and complained of symptoms of depression and anxiety for many years. (Tr. 16, 275, 296). To the extent the ALJ did not consider that Plaintiff was diagnosed with personality disorder by Dr. Rohatgi, the ALJ nonetheless considered Dr. Rohatgi's clinical findings, as discussed above. Indeed, the mere existence of a mental condition is not per se disabling. See Dunlap v. Harris, 649 F.2d 637, 638 (8th Cir. 1981).

Further, the ALJ considered that Plaintiff's mental impairments limited her to performing simple, unskilled work that involved limited social interaction with others. (Tr. 15). As discussed above, prior to reaching these conclusions, the ALJ considered Plaintiff's credibility and found that Plaintiff's subjective complaints were not fully credible. The court has found the ALJ's credibility determination is based on substantial evidence. Because the ALJ gave good reasons for his credibility determination, this court will defer to the ALJ's findings in this regard. Juszczyk v. Astrue, 542 F.3d 626, 632 (8th Cir. 2008) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination.") (quoting Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003)). See also Travis v. Astrue, 477 F.3d 1037, 1042 (8th Cir. 2007) ("This court will not substitute its opinion for theALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence."); Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) ("We will not

substitute our opinion for that of the ALJ, who is in a better position to assess credibility."). Moreover, the issue is not whether the claimant actually experiences the subjective complaints alleged, but whether those symptoms are credible to the extent that they prevent her from performing substantial gainful activity. See Baker v. Apfel, 159 F.3d 1140, 1145 (8th Cir. 1998).

The court has found that the ALJ's consideration of the medical evidence provides substantial evidence to support his credibility determination. The court further finds that the medical evidence provides substantial evidence to support the ALJ's conclusion regarding the limitations resulting from Plaintiff's mental impairments and to support the ALJ's failure to find that Plaintiff suffered from personality disorder which was severe. See Baker, 159 F.3d at 1145. Finally, the court holds that the ALJ's decision, at Step 2, finding that the only severe impairments from which Plaintiff suffered were generalized anxiety disorder with panic attacks and PTSD is supported by substantial evidence and is consistent with the Regulations and case law, and that Plaintiff's arguments to the contrary are without merit.

## C.    Plaintiff's RFC:

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider

the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995). Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified, in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010)

("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); <u>Eichelberger</u>, 390 F.3d at 591.

As stated above, the ALJ found that Plaintiff had the RFC to engage in the full range of work at all exertional levels and that she was limited to simple, unskilled work with limited social interaction with co-workers, supervisors, and the public. The ALJ gave some "limited weight" to Dr. Brandhorst's opinion and significant weight to Buffkins' opinion. Plaintiff argues that, in formulating her RFC, the ALJ gave too much weight to the opinions of Dr. Brandhorst and Dr. Buffkins. (Doc. 15 at 11-15).

First, as discussed above, when determining Plaintiff's RFC, the ALJ included only limitations which he found credible. <u>See</u> <u>Tindell v. Barnhart</u>, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."). The court has found above that the ALJ's credibility determination is based on substantial evidence.

Second, upon determining Plaintiff's RFC the ALJ fulfilled his role to review the entire record and resolve conflicts among the various treating and examining physicians. <u>Estes v. Barnhart</u>, 275 F.3d 722, 725 (8th Cir. 2002).

Third, when determining the weight to be given the various opinions of record, the ALJ considered Plaintiff's treatment records. Indeed, the reports of Plaintiff's treating doctors, in particular Dr. Rohatgi, as set forth above, are consistent with the ALJ's RFC determination. Notably, as also discussed above, Dr. Rohatgi never imposed functional limitations upon Plaintiff, even to the extent the ALJ imposed functional limitations in his RFC assessment.

Fourth, there is no clinical data in the record to support greater limitations that the ALJ included in Plaintiff's RFC.

Fifth, after reviewing the evidence of record, Dr. Brandhorst opined that Plaintiff had "moderate" limitations in activities of daily living, social functioning, and concentration, persistence, or pace. (Tr. 313). She also completed a Mental RFC Assessment, in which she opined that Plaintiff would have no more than moderate limitations in performing mental activities required for work activity, and found Plaintiff was not significantly limited in many areas, including understanding and remembering short and simple instructions, remembering locations and work-like procedures, carrying out very short and simple instructions, and performing activities within a schedule. (Tr. 316-17). Dr. Brandhorst concluded that Plaintiff was capable of performing simple, routine tasks that did not involve considerable stress. (Tr. 315). Upon giving Dr. Brandhorst's opinion "some limited weight," the ALJ noted that Dr. Brandhorst's

opinion was consistent with the treatment notes of record, specifically notes indicating that Plaintiff had "some problems with social functioning and anxiety but that she got "along with her eight children," and that she "interacte[d] appropriately with medical staff." (Tr. 18).

As a State agency medical consultant, Dr. Brandhorst is a highly qualified expert in Social Security disability evaluation; therefore, the ALJ was required to consider her findings as opinion evidence. See 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). Thus, to the extent Plaintiff argues that the ALJ should not have considered Dr. Brandhorst's opinion or that he gave it too much weight (Doc. 15 at 11), the court finds that Plaintiff's argument is without merit, and that the weight given to Dr. Brandhorst's opinion by the ALJ is based on substantial evidence and is consistent with the Regulations and case law. Further, to the extent that Dr. Brandhorst may not have considered the record in its entirety, the ALJ only gave her opinion only "some limited weight." (Tr. 18).

Sixth, to the extent the ALJ gave significant weight to Dr. Buffkins' opinion, she was an examining source and completed an extensive mental status examination of Plaintiff, the details of which are set forth above in regard to Plaintiff's credibility. Cf. Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) ("A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [a claimant's] case record.'") (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). As such, the court finds that the ALJ gave proper weight to Dr. Buffkins' opinion, and that the ALJ's decision, in this regard, is based on substantial evidence and consistent with the Regulations and case law.

**D.     Hypothetical Posed to the VE:**

The ALJ posed a hypothetical to a VE which described a person of Plaintiff's age and with her work history, education, and who had no exertional limitations but would be limited to unskilled work without a lot of social interaction and, because she was small, "could stay within light or sedentary jobs." The ALJ added that Plaintiff would be limited to "unskilled work where there was low stress and not a lot of social interaction." (Tr. 57). The VE responded that there were jobs, such as assembler, which Plaintiff could perform, and that these jobs existed in significant numbers. (Tr. 57). For several reasons, Plaintiff contends that the ALJ posed an improper hypothetical to the VE and that that the ALJ improperly relied on the VE's testimony. For the following reasons, the court finds that Plaintiff's arguments, in this regard, are without merit, and that the ALJ properly relied on the VE's testimony. (Doc. 15 at 9-11).

Specifically, Plaintiff contends that because the RFC which the ALJ ultimately assigned to Plaintiff differed from the person described by the ALJ to

the VE in his hypothetical, that the ALJ's decision is not based on substantial evidence. Plaintiff further argues that her RFC confined her to work with "limited social interaction with co-workers, supervisors and the public," which differed from a person who needed to engage in work "without a lot of social interaction." (Doc. 15 at 9). The court finds, however, that such a distinction is insignificant; the only difference in the language used in the hypothetical to the VE and in the ALJ's ultimate RFC determination is a matter of phrasing rather than substance. Thus, the court finds that the hypothetical which the ALJ posed to the VE mirrored the ALJ's RFC determination, which is based on substantial evidence. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("Based on our previous conclusion . . . that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)).

Plaintiff also argues that the ALJ did not pose a proper hypothetical to the VE because the ALJ did not include "moderate" limitations in activities of daily living, social functioning, and concentration, persistence, or pace in the hypothetical, despite finding Plaintiff has such limitations at Step 3 of the sequential evaluation process. (Doc. 15 at 10). The Regulations explain, however,

that such a finding at Step 3 is not meant to be an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).[4]

To the extent that Plaintiff argues that the ALJ should have included limitations in Plaintiff's RFC beyond those which he found credible, in formulating a hypothetical to a VE, an ALJ is required to include only a claimant's credible limitations. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[T]he ALJ was not obligated to include limitations from opinions he properly disregarded.");

_____

[4] SSR 96-8p, 1996 WL 374184 at *4, states:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the *"paragraph B" and "paragraph C" criteria are not an RFC assessment* but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

(emphasis added).

Guilliams v. Barnhart, 393 F.3d 789, 804 (8th Cir. 2005) (holding that a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ); Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record.").

Further, the hypothetical which the ALJ posed to the VE captured the concrete consequences of Plaintiff's limitations and included all of Plaintiff's impairments as supported by substantial evidence in the record.

Additionally, the ALJ independently consulted the Dictionary of Occupational Titles (DOT), and concluded that the VE's testimony was consistent with information contained in the DOT. (Tr. 20-21). Cf. Kemp v. Colvin, 743 F.3d 630, 632 (8th Cir. 2014) ("[W]hen VE testimony conflicts with the DOT, the DOT controls if its classifications are unrebutted."; where ALJ did not address possible conflict between the DOT and VE's testimony remand was appropriate). Plaintiff has not provided evidence to the contrary.

Because there was work which Plaintiff could perform, based on the testimony of the VE and his independent review of the DOT, the ALJ found Plaintiff was not disabled. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("Based on our previous conclusion . . . that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical

question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)).  As such, the court finds that the ALJ posed a proper hypothetical to the VE; that the ALJ properly relied on the VE's testimony that there was work existing in significant numbers which Plaintiff could perform; and that the ALJ's finding that Plaintiff is not disabled is based on substantial evidence and is consistent with the Regulations and case law.

**E.     Evidence Submitted to the Appeals Council:**

After the ALJ issued his opinion, Plaintiff submitted additional evidence to the Appeals Council.  This evidence included medical records, dated from April 15, 2013, to July 25, 2013, from the office of Plaintiff's family doctor, medical records from St. Clare Health Care, dated June 12, 2013 to August 25, 2013, and therapy progress notes from Comtrea, dated April 4 to September 13, 2013. Plaintiff acknowledges that the text of the Appeals Council's decision makes it clear that it considered this new evidence, but that it nonetheless found that the record as a whole supported the ALJ's decision.  Plaintiff contends, however, that the additional evidence does not support the ALJ's decision.  (Doc. 15 at 14).

The Appeals Council will consider new and material evidence where it relates to the period on or before the date of the ALJ hearing decision.  20 C.F.R. § 404.970(b).  New and material evidence submitted to the Appeals Council which

relates to the period before the date of the ALJ's decision becomes part of the administrative record. <u>Myers v. Colvin</u>, 721 F.3d 521, 526 (8th Cir. 2013) (application for disability benefits remains in effect only until the issuance of "hearing decision" on that application, so evidence submitted to appeals council cannot affect the validity of the ALJ's determination if evidence is of treatment claimant received after issuance of ALJ's opinion); <u>Davidson v. Astrue</u>, 501 F.3d 987, 990 (8th Cir. 2007); <u>Cunningham v. Apfel</u>, 222 F.3d 496, 500 (8th Cir. 2000). To be material, the evidence must be "non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied" and must not concern "subsequent deterioration of a previously non-disabling condition." <u>Jones v. Callahan</u>, 122 F.3d 1148, 1154 (8th Cir. 1997). <u>See also Rehder v. Apfel</u>, 205 F.3d 1056, 1061 (8th Cir. 2000).

Once it is clear that the Appeals Counsel has considered newly submitted evidence, the reviewing court does not evaluate the Council's decision to deny review based on the new evidence; rather, the role of the court is limited to deciding whether the ALJ's determination is supported by substantial evidence on the record as a whole, including new evidence submitted after the determination was made. <u>See Davidson v. Astrue</u>, 501 F.3d 987, 990 (8th Cir. 2007) ("Where, as here, the Appeals Council considers new evidence but denies review, we must determine whether the ALJ's decision was supported by substantial evidence on

the record as a whole, including the new evidence."); <u>Stephens v. Shalala</u>, 50 F.3d 538, 541 (8th Cir. 1995) ("Material new evidence considered by the Appeals Council will be viewed with the record as a whole, whereas new evidence not considered by the Appeals Council will be considered by the reviewing court only upon a showing of materiality and good cause for not incorporating it in the earlier proceedings."; on review, the court will consider the additional evidence as part of the record, "but only to the extent [the claimant] can independently satisfy us as to its materiality.").

While the new evidence submitted to the Appeals Council does relate to the relevant time period, this court's review establishes that it is merely cumulative and that there is no reasonable likelihood that the ALJ's decision would have been different had he considered the additional evidence submitted to the Appeal's Council. Indeed, upon reaching its conclusion that the ALJ's credibility and RFC determination, as well as his consideration of the severity of Plaintiff's mental conditions, are based on substantial evidence, the court has considered the additional evidence. Notably, in regard to the cumulative nature of the additional evidence, this evidence included Dr. Rohatgi's notes reflecting that, on the same day, April 4, 2013, that Plaintiff said she was doing well, that she was able to perform activities of daily living and that she had no problems eating or sleeping, Plaintiff also told Dr. Rohatgi that she could not work. (Tr. 610). Also included

are records, dated May 30, 2013, reflecting that Plaintiff told Dr. Rohatgi that she was able to perform activities of daily living (Tr. 632), and records, dated August 6, 2013, reflecting that Plaintiff's memory, affect and judgment were normal (Tr. 578). Further, as discussed above in regard to Plaintiff's credibility, the additional evidence submitted to the Appeals Council reflects that Plaintiff's symptoms improved with medication, and that Plaintiff had "no complaints," denied depression, and was "doing well." (Tr. 642, 650). The court finds, therefore, that the additional evidence which Plaintiff submitted to the Appeals Council fails to establish that the ALJ's decision is not based on substantial evidence, and that Plaintiff's arguments to the contrary are without merit.

## V.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,


**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint (Docs. 1, 15) is **DENIED**;

**IT IS ORDERED** that a separate judgment be entered incorporating this Memorandum and Order.

Dated this 18th day of December 2015.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE